NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VIKING COMMUNICATIONS, INC., | : | |
| Plaintiff, | : | Civ. No. 05-1078 (GEB) |
| v. | : | **OPINION** |
| AT&T CORP., | : | |
| Defendant. | : | |

**BROWN, District Judge**

This matter comes before the Court upon defendant AT&T's ("Defendant") motion to dismiss plaintiff Viking Communications' ("Plaintiff") complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will grant Defendant's motion in part and deny Defendant's motion in part. Plaintiff is granted thirty (30) days leave to amend the Complaint to cure the deficiencies addressed in this Memorandum Opinion.

**I.   BACKGROUND**

Plaintiff is in the business of selling cable television services, primarily to tenants in residential apartment complexes. In May 2001, Plaintiff purchased telephone services from

Defendant for resale to its customers. The terms of the purchase – including the rates to be charged – were set forth in a written agreement ("Agreement").

In subsequent invoices, Defendant charged rates that differed from those described in the Agreement. Although the charges exceeded what Plaintiff expected to pay, Plaintiff "continued to pay the higher invoices submitted to it by [Defendant] under protest . . . ." Compl. ¶ 18.

On August 12, 2003, Plaintiff filed suit against Defendant in the Superior Court of New Jersey for breach of contract and unjust enrichment. Defendant moved for summary judgment, arguing that Plaintiff's claims were preempted by the Federal Communications Act ("FCA"). On January 7, 2005, the state court found that Plaintiff's claims were federally preempted and dismissed those claims "without prejudice."

Plaintiff filed the complaint in this action on February 25, 2005. Plaintiff seeks relief for Defendant's alleged violation of the FCA, breach of contract and unjust enrichment. Pursuant to Rule 12(b)(6), Defendant now moves for dismissal of each of Plaintiff's claims.

## II.   DISCUSSION

Defendant makes three primary arguments in support of its Rule 12(b)(6) motion. First, Defendant argues that Plaintiff's breach of contract and unjust enrichment claims should be dismissed because the state court decided that they are preempted by the FCA, which decision bars this Court from hearing those claims. Second, Defendant argues that for those alleged overcharges that Plaintiff paid before February 25, 2003 (or two years before the filing of the complaint in this case), Plaintiff's claim is barred because the applicable limitations period has run. Finally, as to the remaining alleged overcharges, Defendant argues that those alleged

violations of the FCA should be dismissed because Plaintiff failed to provide written notice as required by the applicable tariffs.

Upon consideration of the parties' arguments, the Court finds that Plaintiff's breach of contract and unjust enrichment claims should be dismissed, and that Plaintiff's FCA claim survives Defendant's Rule 12(b)(6) motion.

### A.   Standard of Review for Motion to Dismiss

In considering a Rule 12(b)(6) motion to dismiss, this Court "must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff." *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935 (1985). *See also Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000); *Oran v. Stafford*, 226 F.3d 275, 279 (3d Cir. 2000); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The Court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 604 (3d Cir. 1998); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

Although a court should generally disregard any material beyond the pleadings when deciding a Rule 12(b)(6) motion, it may consider exhibits attached to a complaint, matters of public record and undisputedly authentic documents that form the basis of a complaint. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 707 (3d Cir.

1996); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court must first decide what material it may consider before determining the merits of Defendant's motion. Defendant has attached five types of documents to its motion to dismiss: (1) the filed tariffs that it asserts control the parties' agreement; (2) sworn statements made in the course of the state court action; (3) pleadings from that action; (4) decisions and an order by the state court in the earlier proceeding; and (5) an affidavit summarizing the invoices that Defendant claims are at issue.

The Court finds that for purposes of ruling on Defendant's Rule 12(b)(6) motion, it may consider the filed tariffs, the pleadings from the state action and the state court's decisions and order. The Court may consider the attached tariffs as publicly filed documents that are relied upon by Plaintiff's claims. Compl. ¶24 ("The interstate long distance and T-1 rates agreed to in the Master Agreement were authorized by one or more tariffs already on file with the FCC at the time of the Agreement"). *See Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1164-65 (S.D.N.Y. 1996) ("Because those tariffs are public documents that [the defendant] is required to file with the FCC, the court may take judicial notice of them . . . and as a result may consider them on a Rule 12(b)(6) motion even though not included in, or attached to the complaint"); *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("The court finds that the plaintiff's phone bill and [the defendant]'s filed tariff fall within this exception [of being referred to in the complaint] and may be considered without converting the motion into one for summary judgment"). *See also Wilson v. Bernstock*, 195 F. Supp. 2d 619, 623-24 (D.N.J. 2002) (holding that court may take judicial notice of mandated or duly filed SEC forms and notices for purposes

4

of ruling on a motion to dismiss). The Court is also permitted to consider the pleadings from the state action, as well as the state court's opinion, order and subsequent letter to the parties indicating that its decision would stand. These are public records the authenticity of which Plaintiff does not dispute. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint").

The Court may not, however, consider the sworn statements made in the course of the state action. *See Lum*, 361 F.3d at 221 n.3 (holding that district court erred in taking judicial notice of the plaintiff's deposition testimony from an earlier proceeding for the facts therein). Nor may the Court consider Defendant's affidavit summarizing the invoices that Plaintiff allegedly paid. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

> **B.     The State Court's Decision That Plaintiff's State Law Claims Are Preempted by Federal Law Precludes Relitigation of the Same Issue**

Defendant argues that Plaintiff's state law claims should be dismissed because the state court's decision that those claims are preempted by the FCA precludes this Court's consideration of the same issue. For the reasons set forth below, the Court agrees.

> **1.     Collateral Estoppel Generally**

Under the doctrine of collateral estoppel (or issue preclusion), "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit

based on a different cause of action involving a party to the prior litigation." *U.S. v. Mendoza*, 464 U.S. 154, 158 (1984). Collateral estoppel "'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'" *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine "precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted." *Melikian v. Corradetti*, 791 F.2d 274, 277 (3d Cir. 1986) (applying New Jersey law). Where collateral estoppel applies, "the earlier judgment forecloses only a matter actually litigated and essential to the decision [but] does not prevent reexamination of issues that might have been, but were not, litigated in the earlier action." *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988).

### 2. Preclusive Effect of New Jersey State Court Judgments

In this case, the Court must determine the preclusive effect of a state court decision that Plaintiff's state law claims are preempted by federal law. "Generally, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *In re Brown*, 951 F.2d 564, 568-69 (3d Cir. 1991) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Federal courts are "bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state judgment the same effect as would the adjudicating state." *Gregory*, 843 F.2d at 116.

Under New Jersey law, collateral estoppel applies when "the party asserting the bar . . . show[s] that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior

proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Hennessey v. Winslow Twp.*, 875 A.2d 240, 243-44 (N.J. 2005) (quoting *In re Estate of Dawson*, 641 A.2d 1026, 1034-35 (N.J. 1994)) (internal citations omitted).

Here, the state court considered whether Plaintiff's state law claims are preempted by the FCA, the same issue which Defendant now seeks to preclude. *See* Muhlstock Supplemental Aff. Ex. 1 at 43 (Tr. Oral Argument / Decision, Jan. 7, 2005). The issue was actually litigated by the parties through submission of briefs as well as oral argument. The state court found that Plaintiff's state law claims were preempted by the FCA, which finding was essential to the dismissal of those claims. *Id.* The parties in this case are identical to those in the state court action.

The only requirement that poses a challenge to Defendant's assertion of collateral estoppel is that the earlier judgment be "a final judgment on the merits." It appears, however, that New Jersey law supports Defendant's argument that the state court's decision on the issue of preemption was sufficiently final. In reviewing the requirements for collateral estoppel under New Jersey law, the Third Circuit Court of Appeals stated that the doctrine "applies whenever an action is 'sufficiently firm to be accorded conclusive effect.'" *In re Brown*, 951 F.2d at 569 (citing *Hills Dev. Co. v. Twp. of Bernards*, 510 A.2d 621, 652 (1986) (quoting Restatement (Second) of Judgments § 13)). The Court of Appeals noted that "'[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts.' Finality 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees

no really good reason for permitting it to be litigated again.'" *Id.* (quoting *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980)).

According to the Court of Appeals, "[i]n determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Id.* In the case before it, the court held that the state court's grant of summary judgment was sufficiently firm to have preclusive effect. *Id.* at 570. The court noted that in the state case, the parties opposing collateral estoppel were represented by counsel, hearings were held on several occasions, the issues were genuinely contested, the state court indicated an appreciation of the relevant facts and law and there was no indication that the decision was tentative or likely to be changed. *Id.*

In Plaintiff's state court action, the parties argued whether Plaintiff's state law claims were preempted by the FCA through what is known as the filed rate (or filed tariff) doctrine. The state court found that "the Filed Tariff Doctrine governs this case." Muhlstock Supplemental Aff. Ex. 1 at 43. Based on that finding, the state court dismissed Plaintiff's state law claims without prejudice. *Id.* The state court made its decision after considering the briefs and oral arguments by counsel for both parties. *See id.* at 43-44. The state court permitted additional briefing by the parties, and after considering those briefs it "[found] no reason to change or modify [its] original decision." Muhlstock Aff. Ex. 12 at 1. The state court's decision is therefore sufficiently final for the purpose of collateral estoppel.

Based on the state court's finding that the filed tariff doctrine applied, Plaintiff's state law claims were – and remain – federally preempted. *See Am. Tel. & Tel. Co. v. Cent. Office Tel.,*

8

*Inc.*, 524 U.S. 214, 222 (1998) (holding that the filed rate doctrine bars state law claims based on conflicts with the rates set by tariffs); *Fax Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 488 (2d Cir. 1998) ("Unless and until suspended or set aside, this [filed] rate is made, for all purposes, the legal rate, as between carrier and [customer]. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier") (quoting *Keogh v. Chicago & Nw. Ry. Co.*, 260 U.S. 156, 163 (1922)); *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998) ("the filed tariff is the contract between the plaintiff and [the defendant]").

### 3. Although the State Court Dismissed Plaintiff's Claims "Without Prejudice," Its Underlying Finding of Federal Preemption Has Preclusive Effect

Plaintiff argues that the state court's denomination of its dismissal as "without prejudice" gives the dismissal no preclusive effect. But Plaintiff's argument wrongly focuses on the state court's treatment of Plaintiff's claims rather than its decision concerning the issue of federal preemption. While it is generally true that "dismissal of a case without prejudice does not result in *claim* preclusion . . . an *issue* actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties . . . ." *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis in original). *See also Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983) ("The usual meaning of this phrase ['without prejudice'], however, is 'without prejudice as to the substantive cause of action . . . [but] with prejudice on the issue . . . 'which was litigated in the prior action'") (quoting *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 267 (1st Cir.), *cert. denied*, 414 U.S. 857 (1973)). *See also Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("[U]nder principles of issue preclusion,

even a case dismissed *without* prejudice has preclusive effect on the jurisdictional issue litigated") (emphasis in original); *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("dismissals for lack of jurisdiction 'preclude relitigation of the issues determined in ruling on the jurisdiction question'") (quoting *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209-10 (10th Cir. 2001) (quoting 18 Charles A. Wright et al., *Federal Practice & Procedure* § 4436 (1981))). With regard to federal preemption specifically, where a state court has dismissed a plaintiff's state law claims on a finding of federal preemption, a court in a subsequent federal action may not revisit the same issue even if the state court dismissal was without prejudice. *See Muniz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14-15 (1st Cir. 2000) ("[E]ven assuming arguendo that res judicata does not bar the federal district court from adjudicating appellants' *claims*, the doctrine of collateral estoppel prevents the court from hearing the *issue* of preemption . . . . [Because the Superior Court of Puerto Rico found plaintiff's non-federal claims to be federally preempted,] appellants may not relitigate the issue of preemption") (emphasis in original) (citations omitted).

In arguing that a dismissal without prejudice has no preclusive effect on subsequent litigation, Plaintiff cites *Smith v. Pittsburgh Gage and Supply Co.*, 464 F.2d 870 (3d Cir. 1972). But that case did not concern the preclusive effect of a state court judgment on subsequent litigation regarding the same issue. In *Smith*, the plaintiffs were employees who were terminated in the course of negotiations for a new collective bargaining agreement and subsequently filed a complaint with the National Labor Relations Board ("NLRB"). *Smith*, 464 F.2d at 872-73. After the NLRB dismissed the charge, the plaintiffs filed a complaint in Pennsylvania state court. *Id.* at 873. The Pennsylvania Supreme Court found that its jurisdiction was preempted by the NLRB

and dismissed the action. *Id.* The plaintiffs then filed suit in federal court against the employer and union for conspiracy, arguing that the court had jurisdiction pursuant to Section 310 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970). *Id.* at 872, 873. The district court "found that the complaint did not state an action for breach of contract cognizable under Section 301 and was primarily an action to seek redress from an unfair labor practice" so that the court lacked jurisdiction. *Id.* at 873. The plaintiffs then filed a new complaint in federal court alleging breach of contract instead of an unfair labor practice. *Id.* The Third Circuit Court of Appeals held that the district court's initial dismissal did not bar the plaintiffs' second federal suit. *Id.* at 874.

The issue in *Smith* differs from the one here because there, the federal court was not asked to decide an issue that had already been determined. In the state court, the plaintiffs had sued on a claim of conspiracy, which the Pennsylvania Supreme Court found to be preempted by the NLRB. *Smith v. Pittsburgh Gage & Supply Co.*, 194 A.2d 181, 181-82 (Pa. 1963). The federal court in the first federal action dismissed the plaintiffs' claim for an unfair labor practice because such claims were also preempted by the NLRB. *Smith*, 464 F.2d at 873. The Third Circuit Court of Appeals allowed the second federal suit because it was based on an alleged violation of contract. *Id.* The issue of whether the plaintiffs could seek federal relief for violation of contract had not been raised by the plaintiffs in either the federal or state court. In contrast, Plaintiff in this case seeks to bring the same state law claims that the state court found to be preempted by the FCA. In its state action, Plaintiff had full opportunity to argue that its state law claims are not preempted by the FCA. Plaintiff lost that argument and is not entitled now to another attempt.

Plaintiff also relies heavily on *Venuto v. Witco Corp.*, 117 F.3d 754 (3d Cir. 1997). But *Venuto* concerned claim preclusion, not issue preclusion. Indeed, the Third Circuit Court of Appeals expressly declined to consider whether collateral estoppel applied in the case. *See Venuto*, 117 F.3d at 762 ("We note that another aspect of res judicata – namely, issue preclusion or collateral estoppel – may be applicable [to the parties' claims], but we leave these matters to the district court"). The Court need not consider whether claim preclusion would apply in this case, nor whether Defendant is correct in its substantive arguments for finding federal preemption. The state court's finding that the FCA preempts Plaintiff's state law claims precludes this Court's reconsideration of that same issue. As a result, the Court must also find that Plaintiff's claims for breach of contract and unjust enrichment are preempted by the FCA and should be dismissed.

### C. Plaintiff's FCA Claim Survives Defendant's Rule 12(b)(6) Motion

Defendant moves to dismiss Plaintiff's FCA claim on two grounds. First, Defendant seeks dismissal of Plaintiff's claim with respect to the alleged overcharges that Plaintiff paid before February 25, 2003. Defendant argues that recovery of these overcharges are barred because the applicable limitations period has expired. Second, Defendant seeks dismissal of Plaintiff's claim with respect to the remaining alleged overcharges (i.e. those that Plaintiff paid after February 25, 2003) based on Plaintiff's alleged failure to provide written notice objecting to those overcharges. For the reasons discussed below, the Court rejects Defendant's arguments.

      **1.**  **Overcharges Paid Before February 25, 2003, Are Not Barred by the Statute of Limitations**

        **a.**  **Statute of Limitations Defense Is Permitted in Motions to Dismiss**

A court may grant a Rule 12(b)(6) motion based on statute of limitations grounds if the complaint on its face shows noncompliance with the limitations period. *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). Dismissal on such grounds is allowed if the time alleged in the statement of a claim shows that the cause of action has not been brought within the limitations period. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) ("[T]he law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations'") (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). *See also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading").

        **b.**  **Each Overcharge Constitutes a Separate Claim**

Defendant argues that Plaintiff's FCA claim is not a single claim, but instead a collection of distinct claims each arising from separate overcharges. According to Defendant, each overcharge is therefore separately subject to the applicable limitations period.

To support its argument, Defendant cites *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir. 1995). There, the plaintiff sued defendant for failure to make payments for long-distance telephone services that plaintiff provided. *Teleconcepts*, 71 F.3d at 1091. The alleged nonpayment occurred with respect to separate invoices sent during a period of several months. *Id.* The Third Circuit Court of Appeals held that a new cause of action arose each time the defendant failed to pay, thus separately triggering the limitations period. *Id.* at 1101. According to the court, "[the defendant's] duty (both under the tariff and as reflected by [plaintiff]'s actual billing practice) is akin to an obligation to make installment payments. 'In an installment contract, a new cause of action arises from the date each payment is missed.'" *Id.* (quoting *Bd. of Trs. of the Dist. No. 15 Machinists' Pension Fund v. Kahle Eng. Corp.*, 43 F.3d 852, 857 (3d Cir. 1994)).

The Court agrees with Defendant that each alleged overcharge constitutes a separate claim for statute of limitations purposes. As in *Teleconcepts*, the instant case concerns a dispute between a carrier and its customer concerning a series of invoices for services provided. Although the dispute here involves alleged overpayment rather than nonpayment, in both cases, the alleged injury occurred with each invoice. Moreover, as the Court of Appeals observed:

> The period fixed by a statute of limitations begins to run from the 'accrual of the cause of action.' Since 'cause of action' is so uncertain and variable a concept, serious injustice may be done unless the court uses judicial discretion in applying such a statute in the case of 'partial' breaches of a single contract.

*Id.* (quoting 4 A. Corbin, *Corbin on Contracts* § 951 (1951)). For these reasons, the Court finds that the limitations period applies to each separate overcharge.

### c. Factual Discovery Is Required Before Deciding Applicable Limitations Period and Accrual Dates

The applicable limitations period can be found in 47 U.S.C. § 415(c), which states that "[f]or recovery of overcharges action at law shall be begun or complaint filed with the Commission against carriers within two years from the time the cause of action accrues . . . ." Section 415(c) further provides that:

> if claim for the overcharge has been presented in writing to the carrier within the two-year period of limitation said period shall be extended to include two years from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice.

*Id.* Defendant argues that Plaintiff's claims accrued on the dates that it made its payments, and that any overpayments made before February 25, 2003, (or two years before the filing of Plaintiff's complaint) would be barred.

Assuming Defendant is correct that Plaintiff's payments of the alleged overcharges triggered the limitations period, dismissal of Plaintiff's FCA claims with respect to any particular overcharges would nonetheless be improper. The complaint does not include allegations concerning the dates of Plaintiff's payments, Plaintiff's written notices to Defendant or Defendant's disallowances. Plaintiff alleges in its complaint that "[i]n or about May 11, 2001, Viking and AT&T entered into a new agreement . . . whereby AT&T agreed to provide interstate long-distance and digital T-1 telephone service to each of Viking's locations of operation at certain specified rates." Compl. ¶ 15. "Notwithstanding the Agreement, AT&T's subsequent invoices failed to reflect the agreed upon rates." *Id.* ¶ 16. Plaintiff alleges that it "continually complained to AT&T about the erroneous invoices it was still sending, but continued to pay the

15

higher invoices submitted to it by AT&T under protest . . . ." *Id.* ¶ 18.

Taking the allegations in the complaint as true and making all reasonable inferences in Plaintiff's favor, the Court finds no basis for dismissing any of Plaintiff's alleged overpayments based on expiration of the limitations period. Plaintiff may prove at a later stage that the alleged overcharges occurred less than two years before the date of its complaint. Plaintiff may alternatively prove that it provided written claims within two years of the overcharges, and that the complaint was filed within two years of Defendant's disallowance of those claims. The Court therefore finds it improper to dismiss Plaintiff's allegations of overcharges for purposes of Defendant's Rule 12(b)(6) motion. *See S. Cross Overseas Agencies, Inc.*, 181 F.3d at 425 ("When the applicability of the statute of limitations is in dispute, there are usually factual questions as to when a plaintiff discovered or should have discovered the elements of its cause of action, and thus 'defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.' If the complaint's allegations, taken as true, allege facts sufficient to toll the statute of limitations, it must survive a motion to dismiss.") (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985)). It is unnecessary, then, to consider Plaintiff's other arguments against Defendant's motion to dismiss based on expiration of the limitations period.

    **2. Defendant's Argument that Plaintiff's FCA Claim Should Be Dismissed for Lack of Written Notice Similarly Fails**

Defendant also argues that Plaintiff's FCA claim should be dismissed because written notice of overcharge was required by the applicable tariffs but never given by Plaintiff.

According to Defendant, the Court should dismiss the FCA claim because Plaintiff failed to allege that it provided written notice with respect to each overcharge. The Court disagrees.

Based on the allegations in the complaint, it remains unclear whether Plaintiff provided written notice to Defendant objecting to the alleged overcharges. Plaintiff alleges that it "continually complained to AT&T about the erroneous invoices it was still sending, but continued to pay the higher invoices submitted to it by AT&T under protest . . . ." *Id.* ¶ 18. Drawing all reasonable inferences in Plaintiff's favor, the Court must assume that the alleged continual complaints and protests by Plaintiff constitute the written notice that Defendant claims is required. Dismissal based on the absence of more detailed facts would be inappropriate for purposes of Defendant's Rule 12(b)(6) motion. *See Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) ("To withstand a 12(b)(6) motion, a plaintiff need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules"); *Nami*, 82 F.3d at 65 ("The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action. . . . In considering a Rule 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims").

Defendant cites several cases in support of its argument, but all of them are distinguishable. Two did not concern a motion to dismiss. *See MCI WorldCom, Inc. v. Tele Tower, Inc.*, 2002 U.S. Dist. LEXIS 3911 (S.D.N.Y. 2002) (entry of judgment); *MCI Telecomms. Corp. v. Ameri-Tel, Inc.*, 852 F. Supp. 659 (N.D. Ill. 1994) (summary judgment). The remaining case to which Defendant cites is *MFS Int'l, Inc. v. Int'l Telcom Ltd.*, 50 F. Supp. 2d 517 (E.D.

Va. 1999). In that case, the court dismissed the defendant's counterclaims because "[those claims] are time-barred, as they were brought more than a year after the relevant services were rendered by [the plaintiff]." *Id.* at 523. However, the court's ruling was based on an earlier finding that the defendant "claims that between November 1996 and April 1997, the circuit experienced repeated line interruptions and was unable to carry telecommunications traffic on a continuous basis." *Id.* at 518. In contrast, Plaintiff here has not asserted specific dates as to when it "complained to [Defendant] about the erroneous invoices" or what form of "protest" Plaintiff used when it paid the allegedly higher rates. Compl. ¶18. Absent these facts, the Court may not dismiss any part of the Plaintiff's FCA claim for lack of written notice.

### III.  CONCLUSION

For the above reasons, Defendant's motion to dismiss the Complaint is granted in part and denied in part. Specifically, the Court dismisses Plaintiff's breach of contract and unjust enrichment claims. An appropriate form of order is filed herewith.

Dated:  October 14, 2005

                                         s/ Garrett E. Brown, Jr.  
                                         GARRETT E. BROWN, JR., U.S.D.J.